**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIDGETT ANN GLENN, | ) | CASE NO. 3:25-CV-00741-JJH |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **REPORT AND RECCOMENDATION** |
| SECURITY | ) | |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Glenn ("Glenn" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On August 13, 2021, Claimant filed an application for SSI, alleging a disability onset date of December 14, 2017, and claiming she was disabled due to bipolar II disorder, anxiety, depression, mood disorder, borderline personality disorder, osteoarthritis, degenerative disc disease, diabetes, and chronic pain. (ECF No. 8, PageID #: 288–300). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8, PageID #: 232–45). On November 18, 2022, the ALJ held a hearing, during which Glenn, represented by counsel, and an impartial vocational

1

expert testified.  (ECF No. 8, PageID #:  68–107).  On December 8, 2022, the ALJ issued a written decision finding Claimant was not disabled.  (ECF No. 8, PageID #: 39–55).  The ALJ's decision became final on October 16, 2023, when the Appeals Council declined further review.  (ECF No. 8, PageID #:  33–38).

Pursuant to a stipulation, this case was remanded to the ALJ. (ECF No. 8, PageID #:  765–767). On January 22, 2025, the ALJ held another hearing, during which Glenn, represented by counsel, and an impartial vocational expert testified. (ECF No. 8, PageID #:  768–775). The ALJ issued another unfavorable decision on February 3, 2025. (ECF No. 8, PageID #:  672–691). The ALJ's decision became final when Plaintiff did not file exceptions, and the Appeals Council did not assume jurisdiction.

Moreover, Claimant previously filed Title II and Title XVI applications that alleged disability beginning November 15, 2014, which were denied by an ALJ in a written decision on December 13, 2017. (ECF No. 8, PageID #:  675).

On April 14, 2025, Claimant filed her present Complaint to challenge the Commissioner's final decision.  (ECF No. 1.)  The parties have completed briefing in this case. (ECF Nos. 11, 13, 14). Claimant asserts the following assignments of error:

(1) The ALJ erroneously failed to comply with the Order of Remand when she failed to support her conclusions or discuss supportability and consistency when she evaluated the opinions of the treating sources.

(2) The ALJ erred at Steps Four and Five of the Sequential Evaluation when she found Plaintiff could perform work at the sedentary level of exertion and failed to include the need for a cane for balance. (ECF No. 11 at 1.)

## III. Background

### A. Stipulated Remand Order

The Parties agreed to the following in their remand order:

> Pursuant to the District Court remand order, Appeals Council has directed the undersigned to:
> - Give further consideration to the medical source opinion(s) pursuant to the provisions of 20 CFR 416.920c. As appropriate, the Administrative Law Judge may request the medical source provide additional evidence and/or further clarification of the opinion (20 CFR 416.920b).
> - Further evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929 and Social Security Ruling 16-3p).
> - Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 416.945 and Social Security Ruling 85-16 and 96-8p).

(ECF No. 8, PageID #: 675).

### B. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Plaintiff's hearing:

> The claimant testified that he has recently undergone surgery to place titanium in her neck, and weather changes can cause pain in her neck and lower back, and it moves into her arms or legs. She has foot dysfunction, she can only sit for 10-15 minutes before having to get up and move around, and she cannot stand in place for even 5 minutes. She can walk about 15-20 minutes before having to rest. She can zip things, but she cannot button and tends to drop things due to numbness (Hearing Testimony). She has a history of back and neck surgeries and injections. She also has difficulty reaching, she experiences hip pain, and she uses a cane to ambulate due to leg numbness and tingling. If performing chores, she can only do them for about 15 minutes before she needs a break for about 15-20 minutes. About 3-4 times a year, she stays in her clothes for 4-5 days (Hearing Testimony). Despite mental health treatment, her mental health has stayed about the same with good and bad days. She can be agitated and does not have many friends outside of the home. If watching television or reading, she will forget what she saw or read.

3

> She does not get along with others is often tearful and agitated. She
> also relies on family for many of her daily activities (Hearing
> Testimony).

(ECF No. 8, PageID #: 682).

## C. Relevant Medical Evidence

The ALJ also summarized Plaintiff's health records and symptoms:

> The medical evidence supported the claimant's allegations that she
> suffers from radiating neck and back pain, bilateral hip pain, right
> shoulder pain, hand/wrist dysfunction, abdominal pain, sleep
> disturbance, and symptoms related to diabetes. July 2021 left wrist
> x-rays revealed some mild degenerative changes of the triscaphe
> joint (E13F, 3). An April 2022 lumbar spine x-ray showed moderate
> degenerative changes (E13F, 12). A May 2022 lumbar spine MRI
> established a desiccated and slightly narrowed disc space at L4-L5
> with an annular tear, midline protrusion, ligament flavum
> hypertrophy, and ventral thecal sac effacement (E16F, 11; E21F, 93-
> 94; E27F, 128, 264). A November 2022 cervical spine MRI
> indicated minimal disc bulging at C3-C4 with mild spinal stenosis
> and narrowing of the neural foramina, disc bulging at C4-C5 with
> mild spinal stenosis, disc degenerative changes at C5-C6 with disc
> bulging causing moderate-to severe spinal stenosis and narrowing
> of the neural foramina, and disc degeneration at C6-C7 causing mild
> spinal stenosis and narrowing of the left neural foramen (E28F, 36-
> 37). A November 2023 cervical spine x-ray showed spondylotic and
> disc degenerative changes in the mid and lower cervical spine with
> osteophyte formation and reduction of disc spaces at C5-C6 and C6-
> C7 with mild facet arthropathy and without spondylolisthesis or
> abnormal movements (E21F, 85-86). A contemporaneous left
> shoulder x-ray demonstrated moderate AC joint arthritis and
> multiple calcifications or ossifications projecting over the joint
> (E21F, 86-87). A December 2023 left shoulder MRI showed mild
> AC joint arthritis (E21F, 83-84). An August 2024 cervical spine x-
> ray established moderate intervertebral disc space narrowing and
> anterior osteophytic changes at C5-C6, and she underwent an
> anterior cervical diskectomy arthrodesis and anterior
> instrumentation at C5-C6 in October 2024 (E29F, 15, 54). An EMG
> revealed radiculopathy and carpal tunnel syndrome (E31F, 6). She
> had a remote history of umbilical hernia repair in 2008 and in April
> 2019 (E29F, 28; E31F, 2). The claimant also has a history of obesity,
> as evidenced by her weight of 185 pounds at 5' 5" tall which
> calculates to a body mass index (BMI) of 30.782 (E4F, 7).

4

Functionally, she underwent sacral lateral branch radiofrequency ablations and lumbar transforaminal epidural steroid injections (E11F, 4; E13F, 25). Records reflected cervical and lumbar radiculopathy, and she reported that her pain traveled down her legs (E4F, 3). Her back was tender to palpation (E5F, 2). She had decreased sensation in her left lower extremity, bilateral upper extremities, and fingertips (E4F, 4, 14; E5F, 13; E13F, 16). She possessed weak grip strength bilaterally (E13F, 16). She endorsed occasional balance issues (E4F, .). Her shoulder was tender and stiff and exhibited a decreased range of motion due to pain, and her symptoms were aggravated by movement and rainy weather (E5F, 14; E13F, 16; E21F, 5). Both shoulders were positive for impingement (E13F, 16). Her back and neck were tender and exhibited diminished ranges of motion due to pain (E16F, 7; E21F, 8, 37). Her knee exhibited a limited range of motion (E13F, 16). She exhibited an antalgic, limping gait and used a cane to walk (E13F, 44; E16F, 7; E21F, 46). She reported upper extremity tingling, weakness, and numbness with wrist pain, tingling, and numbness (E7F, 7; E21F, 37). As for her diabetes, her recorded A1Cs were 7, 8.6, 7.3, 11 (E2F, 6; E4F, 3; E12F, 1; E15F, 3). Providers noted some mild non-proliferative diabetic retinopathy with bilateral macular edema (E2F, 15). She also experienced diabetic polyneuropathy (E13F, 17).

(ECF No. 8, PageID #: 682–83).

[Claimant's] July 2021 left wrist x-rays showed no radiographic evidence of acute osseous abnormality, and a November 2024 cervical spine x-ray revealed no acute findings and stable hardware placement (E13E, 3; E29F, 42). Her EMG showed only minimal carpal tunnel syndrome bilaterally (E31F, 6). She reported 50% to 80%-90% pain relief after lumbar facet medial branch radiofrequency ablations (E5F, 1, 7; E7F, 3). After her ACDF, she reported only a little numbness in her right-hand fingertips and possessed 5/5 grip strength (E29F, 8). She also exhibited improved shoulder and cervical spine range of motion after surgery and with physical therapy (E32F, 4).

She was not in acute distress at appointments, which is inconsistent with the alleged severity and frequency of pain (E4F, 3; E15F, 3; E25F, 31; E29F, 20; E31F, 10). She often exhibited a normal gait, or providers noted she was negative for a gait problem (E4F, 11; E21F, 14, 59; E22F, 7; E25F, 37; E33F, 22). General musculoskeletal reviews revealed a normal range of motion without tenderness (E25F, 32; E32F, 86). She possessed 5/5 strength in all extremities (E4F, 4; E8F, 3; E15F, 4; E21F, 8; E29F, 25; E31F, 2).

She denied weakness (E5F, 4; E25F, 36; E30F, 15; E31F, 9). Providers noted intact sensation and normal reflexes or that she lacked sensory deficits (E5F, 1; E16F, 7; E21F, 29). At times, she exhibited no tenderness or diminished ranges of motion in her neck, wrist, and/or shoulder (E7F, 8; E21F, 40). Her coordination was intact, and she denied balance difficulty (E21F, 7; E25F, 21; E31F, 9).

As for her diabetes, she had 20/30 vision in her right eye and 20/40 vision in her left eye when wearing glasses (E12F, 1). She underwent cataract extraction in June 2023, and by August 2023, she denied any signs or symptoms related to her vision, and an exam revealed 20/20 vision in each eye (E23F, 7, 16). Providers also described her diabetes as controlled and without complication (E25F, 13, 27; E30F, 1). As for her hernia, she denied abdominal pain, tenderness, and complaints (E25F, 36; E29F, 19; E31F, 6, 9). Moreover, providers noted no palpable hernias in February 2023 (E25F, 37). Regarding her OSA, she denied a sleep disorder and shortness of breath that woke her from sleep (E13F, 16). She reported that she used her CPAP on a regular basis, and it helped improved her life and medical problems with improved sleep quality and decreased daytime hypersomnolence (E13F, 20). Her most serious OSA complaints occurred when her machine was no longer functioning and she needed a new one, and she endorsed markedly improved sleep quality and improved daytime somnolence when she received a new one (E25F, 10-11, 13-14).

The medical [sic.] also supported the claimant's allegations that she suffers from mental impairments. Her ability to perform her activities of daily living was moderately impaired (E28F, 26; E29F, 22). She reported anxiety attacks and mood swings (E3F, 3; E18F, 15; E22F, 3). She displayed an anxious, constricted, labile, and depressed mood and affect (E3F, 6; E10F, 5; E18F, 18; E22F, 6). She lacked energy and had a lack of interest (E3F, 3; E10F, 16; E18F, 15). She could be distracted and have tangential thoughts at appointments (E10F, 12; E18F, 18; E22F, 6). She was fidgety and complained of malaise (E13F, 16; E22F, 7). She experienced some paranoia (E3F, 6). She could also display a disheveled appearance (E3F, 13; E22F, 12).

However, the record failed to establish more than moderate mental restrictions. Her most serious symptoms coincided with situational stressors including nicotine and marijuana cessation (E6F, 7; E22F, 27; E33F, 16). At times, she went without psychiatric medications (E8F, 2). Psychiatric/behavioral reviews were negative (E16F, 7; E21F, 7, 14, 29, 37, 58). She was negative for a memory

6

impairment/deficit, and her memory was intact (E3F, 6; E4F, 4; E10F, 5; E21F, 8; E31F, 1). She demonstrated appropriate cognitive reasoning and understanding of her medical conditions and have no obvious deficits in reasoning or intellect (E16F, 7; E21F, 8, 24; E25F, 21; E29F, 25). Providers noted normal and unimpaired mentation/cognition (E25F, 11, 14; E32F, 17). She exhibited normal speech (E3F, 6; E6F, 4; E18F, 18). She maintained normal eye contact (E3F, 13; E18F, 18; E22F, 6). She was cooperative with providers and demonstrated intact social and emotional reciprocity (E4F, 3; E15F, 3; E22F, 7, 19; E29F, 20; E33F, 22). She displayed a normal mood and affect (E16F, 7; E21F, 8, 18; E25F, 32; E32F, 86). She was interactive and had a pleasant demeanor (E25F, 14, 32; E32F, 86). She was negative for agitation, mood swings, and irritability (E29F, 20; E30F, 15). She exhibited normal attention and concentration (E3F, 6; E4F, 3; E8F, 2; E16F, 7; E21F, 8; E25F, 21; E29F, 29; E31F, 1). Her thoughts were logical (E3F, 6; E6F, 5; E10F, 5; E22F, 6). She could possess normal energy and interests (E22F, 3). She was alert and oriented to person, place, time, and situation (E3F, 6; E6F, 5; E16F, 7; E21F, 8; E22F, 6; E31F, 1). She was negative for hallucinations, self-harm, and suicidal ideation (E3F, 6; E18F, 18; E22F, 6; E28F, 18). She demonstrated good and intact judgment and insight (E3F, 6; E10F, 5-6; E13F, 35; E22F, 7; E33F, 22). Moreover, she was well-groomed with fair hygiene and a neat appearance (E5F, 1; E6F, 34; E7F, 7; E18F, 18; E22F, 6).

(ECF No. 8, PageID #: 683–85).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

2. The claimant has the following severe impairments: cervical and lumbar radiculopathy, status-post ablation, osteoarthritis of the right hip; degenerative disk disease of the lumbar spine L4-S1; cervical spine degenerative spondylosis; right shoulder degenerative changes, including calcifications at the glenohumeral joint and degenerative changes of the acromioclavicular (AC) joint; left hip trochanteric bursitis; obesity; diabetes mellitus; carpal tunnel syndrome; and, mental impairments variously diagnosed as bipolar disorder, depression, mood disorder, and borderline personality disorder, status-post cervical fusion; status-post hernia repair, and obstructive sleep apnea (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can lift carry 10 pounds occasionally and less than 10 pounds frequently stand and/or walk 6 hours in an 8-hour day; she can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; she should avoid stooping greater than 90 degrees, crawling, and hazards; handle and finger with the bilateral upper extremities; she requires a cane for ambulation; and she can occasionally reach overhead bilaterally. She is limited to simple, routine tasks and should avoid pace rate and strict product quotas; she can make simple work-related decisions with occasional changes; and occasionally interact with coworkers and supervisors but should avoid interaction with the public and performing tandem work and group setting.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 2, 2021, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 8, PageID #: 678–79, 681, 689–90).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.  Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the

9

claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises two issues on appeal. First, she argues that the ALJ failed to comply with the remand when she failed to discuss supportability and consistency in her evaluation of the treating sources. (ECF No. 11 at 10–21). Next, Claimant argues that the ALJ erred at Steps Four and Five of the Sequential Evaluation when she found Claimant could perform work at the sedentary level and did not include Claimant's need for a cane for balance in the RFC. (ECF No. 11 at 22–25). The Court addresses each issue below.

### 1. The ALJ Properly Evaluated the Opinion Evidence for Supportability and Consistency.

Claimant contends the ALJ's analysis of Dr. Knight, Dr. Ross, and Dr. Sprout's medical opinions lacked supportability, consistency, and were generally unsupported by the record. (ECF No. 11 at 1, 10, 12–21). The Court addresses this issue below.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). For claims filed after March 27, 2017, such as this one, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Still, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c).

"Under Social Security regulations, an ALJ weighing medical opinions must consider two factors: supportability and consistency. The supportability analysis examines 'the extent to which the objective medical evidence and supporting explanations presented by a medical source…

10

support his… medical opinion(s).' The consistency analysis looks at how consistent a medical opinion is with evidence from other sources." *Woodard v. Comm'r of Soc. Sec.*, No. 5:22-cv-01728, 2023 U.S. Dist. LEXIS 159761, *5 (N.D. Ohio Sep. 11, 2023). The Social Security regulations define these factors:

1. Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

2. Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

### A.  Medical Source Statement, Treating Physician, Kim Knight, M.D.

Claimant alleges that the ALJ failed to address supportability and consistency in her assessment of Dr. Knight's opinion. (ECF No. 11 at 12–13) (ECF No. 14 at 2). Specifically, Claimant contends, "[the] ALJ incorrectly based this determination regarding the supportability and consistency of the treating source's opinion on the that [sic] that she was better after surgery and not in acute distress at appointments." *Id.* Moreover, Claimant contends that the ALJ failed to support her finding that Dr. Knight's opinion was not persuasive as "the [ALJ's] rationale was contrary to the evidence set forth above and was not support by substantial evidence." *Id.* The Commissioner responds that the ALJ properly addressed the supportability and the consistency factors as she reviewed the evidence Dr. Knight relied upon to form her opinion and the ALJ cited to records before and after Claimant's surgery to demonstrate a lack of consistency and establish substantial evidence supporting the ALJ's findings. (ECF No. 13 at 7–9). This Court agrees with the Commissioner.

Glenn's treating physician, Dr. Knight, completed a physical medical source statement. (ECF No. 8, PageID #: 637–40). She stated that Glenn has diagnoses of lumbosacral spondylosis with radiculopathy, neuropathy, degenerative disc disease, diabetes, retinopathy, and diffuse osteoarthritis. *Id.* She also listed Claimant's symptoms including, "constant fatigue, insomnia, muscle pain, muscle cramps, muscle weakness, back pain, neck pain, wrist pain, difficulty walking, limping, tingling in hands, feet, radicular pain down the legs and back." *Id.* She opined Glenn has functional limitations in a competitive work environment including, the ability to sit for fifteen minutes at a time without standing up, the ability to stand for 5 minutes at time before needing to sit down, and the ability to sit and stand/walk for a total of two hours in an eight-hour working day. *Id.* Finally, Dr. Knight opined Claimant would be "off task" 25% of the typical workday. *Id.*

The ALJ found Dr. Knight's opinion was supported by the record. She reasoned:

> Dr. Knight supported the opinion with the claimant's fatigue, insomnia, muscle pain and cramps, weakness, tingling hands and feet, tender points, muscle spasms, unsteadiness on her feet, paresthesias and numbness, imbalance, and sleep dysfunction (E17F, 1- 4).

(ECF No. 8, PageID #: 687). Here, the ALJ explicitly discussed and cited which objective medical records Dr. Knight considered in forming her opinion as required by 20 C.F.R. § 404.1520c(c)(1). Therefore, the supportability factor as to Dr. Knight's opinion is met.

Moreover, the ALJ considered the lack of consistency of Dr. Knight's opinion. The consistency factor requires an ALJ to consider the degree to which a medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). The Court reviews the ALJ's determination as a whole. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016).

Here, the ALJ found Dr. Knight's opinion not consistent with the record evidence:

> [T]he record failed to establish that the claimant was this limited. The claimant's EMG showed only minimal carpal tunnel syndrome bilaterally (E31F, 6). After her ACDF, she reported only a little numbness in her right-hand fingertips and possessed 5/5 grip strength (E29F, 8). She also exhibited improved shoulder and cervical spine range of motion after surgery and with physical therapy (E32F, 4). She was not in acute distress at appointments, which is inconsistent with the alleged severity and frequency of pain (E4F, 3; E15F, 3; E25F, 31; E29F, 20; E31F, 10). She often exhibited a normal gait, or providers noted she was negative for a gait problem (E4F, 11; E21F, 14, 59; E22F, 7; E25F, 37; E33F, 22). She possessed 5/5 strength in all extremities (E4F, 4; E8F, 3; E15F, 4; E21F, 8; E29F, 25; E31F, 2). Providers noted intact sensation and normal reflexes or that she lacked sensory deficits (E5F, 1; E16F, 7; E21F, 29). At times, she exhibited no tenderness or diminished ranges of motion in her neck, wrist, and/or shoulder (E7F, 8; E21F, 40). Moreover, her coordination was intact, and she denied balance difficulty (E21F, 7; E25F, 21; E31F, 9). Additionally, she exhibited normal attention and concentration, which failed to support the opinion that the claimant would be off task more than 25% of the day (E3F, 6; E4F, 3; E8F, 2; E16F, 7; E21F, 8; E25F, 21; E29F, 29; E31F, 1).

(ECF No. 8, PageID #: 687). However, Claimant contends that the ALJ incorrectly found Dr. Knight's opinion unpersuasive as she improperly relied upon medical records that indicated, "[Claimant] was better after surgery and not in acute distress at appointments." (ECF No. 11 at 12). However, the ALJ did not solely rely upon such limited medical records in making her determination. (ECF No. 8, PageID #: 687). The ALJ cited to numerous medical records in finding Dr. Knight's opinion was not consistent with the record including; progress notes from Nurse Practitioner, Angela Gillmor dated April 2023, noting that Claimant's Electromyography (EMG) showed "bilateral minimal carpal tunnel syndrome," follow-up notes after Glenn's Anterior Cervical Discectomy and Fusion (ACDF) in which she reported having a little numbness in her fingers on the right hand and 5/5 grip strength, physical therapy progress notes that indicated improved shoulder and cervical spine range of motion after surgery, follow-up notes from Nurse

Practitioner, Jacqueline Graziani, dated February 2021 noting Glenn's normal gait, treatment notes from Dr. Nicole Danner dated July 2021 indicating 5/5 strength in all extremities, follow-up notes from Dr. Sherif Zaky dated August 2021, indicating no tenderness or diminished ranges of motion in her neck, wrist, and/or shoulder, progress notes from Matthew Neinberg, Physician's Assistant dated December 2023, indicating her coordination was intact, and no balance difficulty, and office treatment records indicating normal attention and concentration. (ECF No. 8, PageID #: 1672, 1772, 1800, 431, 425, 440, 1007, 411). The ALJ provided a logical bridge between her conclusions, the provider's evidence, and evidence in the record, in concluding that Dr. Knight's opinion is not consistent with evidence of the record. Therefore, the consistency factor as to Dr. Knight's opinion is satisfied.

However, Claimant requests this Court disturb the ALJ's findings and provides evidence that supports an alternative determination. (ECF No. 11 at 12–13) (e.g. describing Dr. Knight's treatment of Claimant for over 20 years as bolstering the consistency of her opinion). Because substantial evidence supports the Commissioner's decision, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

### B.  Medical Source Statement, Samuel Ross, M.D., treating provider

Next, Claimant alleges that the ALJ failed to address supportability and consistency in her assessment of Dr. Ross' medical source statement. (ECF No. 11 at 15–16). Specifically, Claimant contends the ALJ's finding of unpersuasiveness regarding Dr. Ross' medical source statement "…

was neither supported by nor was it consistent with the medical evidence in this matter. The ALJ failed to support her conclusion or provide evidence which was consistent with her conclusion." *Id.* The Commissioner responds that the ALJ properly addressed the supportability and the consistency factors as she reviewed the evidence Dr. Ross relied upon to form his opinion. (ECF No. 13 at 9–10). This Court agrees with the Commissioner.

Glenn's treating physician, Dr. Ross, completed a physical medical source statement. (ECF No. 8, PageID #: 1158–61). He stated that Glenn has diagnoses of bipolar disorder, anxiety, spondylosis, retinopathy, HTN, and DM. *Id.* He opined Glenn could sit and stand 30 minutes at a time and four hours per day and occasionally lift 10 pounds but would need unscheduled breaks and would be absent 4 days per month. *Id.* He further opined she would be off task 10% of the day and she was limited to low stress work. *Id.*

The ALJ found Dr. Ross' opinion was supported by the record. She reasoned:

> Dr. Ross supported the opinion with the claimant's 8/10 back pain,
> pain controlled by pain management, paresthesias and numbness,
> and cold weather bothering her joints (E24F, 1-2, 4).

(ECF No. 8, PageID #: 688–89). Here, the ALJ explicitly discussed and cited which objective medical records Dr. Ross considered in forming his opinion as required by 20 C.F.R. § 404.1520c(c)(1). Therefore, the supportability factor as to Dr. Ross' opinion is met.

Moreover, the ALJ considered the lack of consistency of Dr. Ross' opinion. The consistency factor requires an ALJ to consider the degree to which a medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). The Court reviews the ALJ's determination as a whole. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016).

Here, the ALJ found Dr. Ross' opinion not consistent with the record evidence:

[T]his opinion is inconsistent with the record. The claimant's EMG showed only minimal carpal tunnel syndrome bilaterally (E31F, 6). After her ACDF, she reported only a little numbness in her right-hand fingertips and possessed 5/5 grip strength (E29F, 8). She also exhibited improved shoulder and cervical spine range of motion after surgery and with physical therapy (E32F, 4). She was not in acute distress at appointments, which is inconsistent with the alleged severity and frequency of pain (E4F, 3; E15F, 3; E25F, 31; E29F, 20; E31F, 10). She often exhibited a normal gait, or providers noted she was negative for a gait problem (E4F, 11; E21F, 14, 59; E22F, 7; E25F, 37; E33F, 22). She possessed 5/5 strength in all extremities (E4F, 4; E8F, 3; E15F, 4; E21F, 8; E29F, 25; E31F, 2). Providers noted intact sensation and normal reflexes or that she lacked sensory deficits (E5F, 1; E16F, 7; E21F, 29). At times, she exhibited no tenderness or diminished ranges of motion in her neck, wrist, and/or shoulder (E7F, 8; E21F, 40). Moreover, her coordination was intact, and she denied balance difficulty (E21F, 7; E25F, 21; E31F, 9). Therefore, the undersigned finds this opinion unpersuasive.

(ECF No. 8, PageID #: 689). However, Claimant contends that the ALJ incorrectly found Dr. Ross' opinion unpersuasive as she improperly relied upon medical records that indicated, "Plaintiff was not in acute distress at appointments [,] and she exhibited improvement after surgery." (ECF No. 11 at 15). However, the ALJ did not solely rely upon such limited medical records in making her determination. (ECF No. 8, PageID #: 688–89). The ALJ cited to numerous medical records in concluding that Dr. Ross' opinion was not consistent with the record including; progress notes from Nurse Practitioner, Angela Gillmor dated April 2023, noting that Claimant's Electromyography (EMG) showed "bilateral minimal carpal tunnel syndrome," follow-up notes after Glenn's Anterior Cervical Discectomy and Fusion (ACDF) in which she reported having a little numbness in her fingers on the right hand and 5/5 grip strength, physical therapy progress notes that indicated improved shoulder and cervical spine range of motion after surgery, follow-up notes from Nurse Practitioner, Jacqueline Graziani, dated February 2021 noting Glenn's normal gait, and treatment notes from Dr. Nicole Danner dated July 2021 indicating 5/5 strength in all extremities. (ECF No. 8, PageID #: 1672, 1772, 1800, 431). Thus, the ALJ provided a logical

bridge between her conclusions, the provider's evidence, and evidence in the record, in concluding that Dr. Ross' opinion is not consistent with evidence of the record. Therefore, the consistency factor as to Dr. Ross' opinion is satisfied.

However, Claimant again requests this Court disturb the ALJ's findings and provides evidence that supports an alternative determination. (ECF No. 11 at 15–16) (describing Dr. Ross' findings at issue as evidence of an alternative determination). Because substantial evidence supports the Commissioner's decision, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

### C.  Mental Impairment Questionnaire, Kelly Sprout, M.D., treating provider

Additionally, Claimant alleges that the ALJ failed to address supportability and consistency in her assessment of Dr. Sprout's mental impairment questionnaire. (ECF No. 11 at 18–20). In November 2022, Dr. Sprout completed a mental impairment questionnaire in which she opined that Claimant was either unable to meet competitive standards or had no useful ability to function in all areas except the ability to be aware of normal hazards and take appropriate precautions. (ECF No. 8, PageID #: 670–71). Subsequently, Dr. Spout completed another mental impairment questionnaire in January 2024, in which she opined Claimant was seriously limited, but not precluded, unable to meet competitive standards, or had no useful ability to function in all the mental functioning categories. (ECF No. 8, PageID #: 1240–41).

The ALJ addressed supportability in her evaluation of Dr. Sprout's 2022 opinion, "Dr. Sprout supported the opinion by simply citing the claimant's bipolar disorder, anxiety, depression, mood swings, low energy, guarded prognosis, and listed medications (citation omitted)." (ECF No. 8, PageID #: 688). The ALJ again addressed supportability in her evaluation of Dr. Sprout's 2024 opinion, "[a]gain, Dr. Sprout simply noted the claimant's diagnoses and medication with symptoms of anxious mood, pressured speech, and distraction (citation omitted)." *Id.* Thus, the ALJ explicitly discussed and cited which objective medical records Dr. Sprout considered in forming her opinion as required by 20 C.F.R. § 404.1520c(c)(1). Therefore, the supportability factor as to Dr. Sprout's opinion is met.

Moreover, the ALJ properly addressed the consistency factor in her assessment of Dr. Sprout's mental health impairment evaluations:

> [T]he opinion in inconsistent with other treating provider records. The claimant's own function reports failed to reflect issues remembering, understanding, or following instructions (E3E, 6; E18E, 6). She demonstrated appropriate cognitive reasoning and understanding of her medical conditions and have no obvious deficits in reasoning or intellect, and providers also noted normal and unimpaired mentation/cognition (E16F, 7; E21F, 8, 24; E25F, 11, 14, 21; E29F, 25; E32F, 17). Providers also noted normal and unimpaired mentation/cognition (E25F, 11, 14; E32F, 17). Socially, she demonstrated intact social and emotional reciprocity (E3F, 13; E4F, 3; E15F, 3; E18F, 18; E22F, 6-7, 19; E29F, 20; E33F, 22). She was interactive and had a pleasant demeanor (E25F, 14, 32; E32F, 86). Moreover, she was negative for agitation, mood swings, and irritability (E29F, 20; E30F, 15). With regard to attention and concentration, she exhibited normal attention and concentration (E3F, 6; E4F, 3; E8F, 2; E16F, 7; E21F, 8; E25F, 21; E29F, 29; E31F, 1). As for adaptation, she was alert and oriented to person, place, time, and situation (E3F, 6; E6F, 5; E16F, 7; E21F, 8; E22F, 6; E31F, 1). She also demonstrated good and intact judgment and insight (E3F, 6; E10F, 5-6; E13F, 35; E22F, 7; E33F, 22).

(ECF No. 8, PageID #: 688). Again, the ALJ compared Dr. Sprout's findings with numerous medical evidence of the record. Thus, the consistency factor is met.

However, Claimant notes that despite the ALJ's explanations regarding Dr. Sprout's opinions, the ALJ expressly stated the opinions were persuasive. (ECF No. 11 at 18) (ECF No. 8, PageID #: 688) ("Thus, the undersigned finds these opinions persuasive"). Commissioner asserts that this was a typographical error and "[g]iven that the ALJ found Dr. Sprout's opinion not well supported and inconsistent with the record, and the fact that the ALJ assessed an RFC inconsistent with the doctor's opinion, a commonsense reading is that the ALJ made a typographical error in leaving off 'un' or 'not' from persuasive." (ECF No. 13 at 11). This Court agrees with the Commissioner. This Circuit makes clear that typographical and scrivener's errors in drafting do not require remand when the "ALJ's true meaning is easily discernible." *Barnes v. Comm'r of Soc. Sec.*, No. 16-13714, 2018 U.S. Dist. LEXIS 49545, 2018 WL 1474693, at *8 n.2 (E.D. Mich. Mar. 6, 2018), *report and recommendation adopted*, No. 16-13714, 2018 U.S. Dist. LEXIS 48827, 2018 WL 1471440 (E.D. Mich. Mar. 26, 2018); *Kenneth M. v. Comm'r of Soc. Sec.*, Civil Action No. 24-11628, 2025 LX 346713 (E.D. Mich. May 30, 2025) (holding the ALJ's statements that Claimant's condition was both severe and not severe were scrivener's errors, not requiring remand as the ALJ's true meaning could be easily discerned through the ALJ's analysis). Here, the ALJ's true meaning is easily discernable. As noted above, the ALJ found Dr. Sprout's opinions to be inconsistent with other treating provider records. (ECF No. 8, PageID #: 688). The ALJ also cited to numerous records in her comparison of Dr. Sprout's opinion and the medical record at large. *Id.* Therefore, this Court will not disturb the ALJ's findings regarding the lack of consistency and thus unpersuasive finding of Dr. Sprout's opinions.

**2.  The ALJ did not err in her application of Acquiescence Ruling (AR) 24-1(6).**

Additionally, Claimant asserts, "the ALJ erroneously relied on the opinions of the State Agency reviewing psychological sources (citation omitted) even though they violated the law in

this matter and relied on the prior ALJs' findings." (ECF No. 11 at 18). Commissioner responds that according to both AR 24-1(6) and the Sixth Circuit's decision in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), the ALJ is permitted to review prior findings, even though they are not bound by such findings. (ECF No. 13 at 12). The Court agrees with the Commissioner.

In *Earley*, the Sixth Circuit held that prior findings made at the ALJ hearing or AC level should be considered in the adjudication of disability for an unadjudicated period in a subsequent claim, stating that "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Earley*, 893 F.3d at 933. *Earley* indicates that an adjudicator honors the principles of res judicata "by considering what an earlier judge found with respect to a later application and by considering that earlier record." *Id.* Therefore, where a final decision after a hearing on a prior disability claim contains a finding of a claimant's RFC or other finding required under the applicable sequential evaluation process for determining disability, SSA *must* consider such findings as evidence when adjudicating a subsequent disability claim, arising under the same or a different title of the Act, involving an unadjudicated period.

Here, the ALJ properly applied both (AR) 24-1(6) and *Earley:*

> The undersigned applied AR 24-1(6) to this claim(s) and considered the required findings in the prior final decision issued on December 13, 2017[,] as evidence to be considered at each step in the sequential evaluation process. The undersigned finds that the alleged onset of disability of December 14, 2017[,] is close to the date of the prior decision; however, the new objective medical evidence including cervical spine fusion surgery, EMG confirming carpal tunnel syndrome, and new imaging of the claimant's wrist, lumbar, cervical, and left shoulder warranted a reduction to sedentary work.

(ECF No. 8, PageID #: 676).

Claimant cites *DiLauro v. Comm'r of Soc. Sec.*, No. 5:19 cv 2691, 2021 WL 1175415, at *3-4 (N.D. Ohio Mar. 29, 2021), arguing that the ALJ's adoption of prior findings from previous ALJs "casts a pall over the entire hearing." (ECF No. 13 at 20). However, unlike the ALJ in *DiLauro*, the present ALJ did not directly adopt the previous RFC. (ECF No. 8, PageID #: 676). In the instant case, the present ALJ considered the prior ALJ's RFC determination, yet noted the temporal proximity and the new objective medical evidence including cervical spine fusion surgery, EMG confirming carpal tunnel syndrome, and new imaging of the claimant's wrist, lumbar, cervical, and left shoulder warranted a reduction to sedentary work. (ECF No. 8, PageID #: 676). Subsequently, the ALJ formulated a new RFC that reduced the Claimant to sedentary work. (ECF No. 8, PageID #: 681). Therefore, the ALJ and state psychological experts did not err in their consideration of the complete record pursuant to (AR) 24-1(6) and *Earley*.

**3. The ALJ's finding that Claimant needed a cane only for ambulation is supported by substantial evidence.**

Finally, Claimant challenges the ALJ's RFC determination asserting the ALJ erred in her conclusion that Claimant required a cane for ambulation only. (ECF No. 11 at 23). Claimant relies upon Dr. Knight's September 2022 opinion in which she opined Claimant "required a cane for both standing and walking." *Id.* (citing PageID #: 687). Commissioner concedes that "Dr. Knight's opinion could serve as evidence that a cane was medically required for both standing and walking." (ECF No. 13 at 13–14). Pursuant to Social Security Ruling 96-9p, 1996 SSR LEXIS 6 an ALJ should "find that a hand-held assistive device is medically required," only where there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or

21

only in certain situations; distance and terrain; and any other relevant information)." 1996 SSR LEXIS 6, at *19, 1996 WL 374185, at *7 (July 2, 1996). *Jones v. Comm'r of Soc. Sec.*, 815 F. App'x 926, 931 (6th Cir. 2020). Additionally, the "burden to prove through clinical evidence that a cane is medically required" is on the claimant. *Baker v. Comm'r of Soc. Sec.*, No. 2:19-CV-4323, 2020 U.S. Dist. LEXIS 80605, 2020 WL 2213893, at *7 (S.D. Ohio May 7, 2020) (Morrison, D.J.) (quoting *Strain v. Comm'r of Soc. Sec. Admin.*, No. 5:12-cv-1368, 2013 U.S. Dist. LEXIS 108118, 2013 WL 3947160, at *2 (N.D. Ohio Aug. 1, 2013)).

Here, Claimant did not meet her burden under Social Security Ruling 96-9p, 1996 SSR LEXIS 6. (ECF No. 13 at 13–14). In her medical source statement, Dr. Knight circled "yes" to the question "[m]ust your patient use a cane or other hand-held assistive device?" (ECF No. 8, PageID #: 639). Subsequently, under the following question, "[i]f yes what symptoms cause the need for a cane?" Dr. Knight checked both "[i]mbalance" and "[p]ain." This Court explicitly finds this scant medical source statement to be deficient evidence to demonstrate Claimant's need for a cane. *See Hamm v. Comm'r of Soc. Sec.*, No. 1:25-cv-423, 2025 U.S. Dist. LEXIS 224174, at *24 (N.D. Ohio Nov. 14, 2025), *report and recommendation adopted by* 2025 U.S. Dist. LEXIS 262434 (N.D. Ohio Dec. 19, 2025) (upholding ALJ's finding that treatment provider "circl[ing] 'yes' to the question '[w]hile engaging in standing/walking, must your patient use a cane or assistive device?'" deficient as sole evidence offered to support need for cane for ambulation only). Moreover, the Court will not disturb the ALJ's findings as the ALJ properly evaluated Dr. Knight's medical source statement and presented substantial evidence in concluding the opinion was not consistent with evidence of the record. (ECF No. 8, PageID #: 687). The ALJ provided substantial evidence conveying the inconsistency of Dr. Knight's opinion regarding the Claimant's difficulties with balance, including Physician's Assistant notes dated December 2023, indicating her

22

coordination was intact, and no balance difficulty, and Nurse Practitioner's notes dated April 2024, indicating that Claimant "[d]enies balance difficulty [and] [d]enies Gait abnormality." (ECF No. 8, PageID #: 411, 1779).

However, Claimant asserts that the mere existence of Dr. Knight's opinion warrants remand. (ECF No. 14 at 5). Yet even assuming Dr. Knight's opinion was substantial evidence to support the use of a cane for more than ambulation, ALJs are "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). "If supported by substantial evidence, the Commissioner's decision must be affirmed, even if the reviewing court would decide the case differently." *Wallace v. Comm'r of Soc. Sec.*, 221 F.3d 1337 (Table), 2000 U.S. App. LEXIS 24244, 2000 WL 799749, at *1 (6th Cir. 2000) (citing *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). Thus, this Court will not disturb the ALJ's findings as the ALJ provided substantial evidence in her finding that Claimant needed a cane only for ambulation.

Additionally, Claimant asserts that her need for a cane is evidenced by her providers' noting her use of a cane. (ECF No. 11 at 23). However, Courts within this Circuit directly hold that provider's observations regarding the Claimant's use of cane does not establish medical need for the device. *See Coleman v. Comm'r of the SSA*, No. 3:20-cv-155, 2021 U.S. Dist. LEXIS 140448, at *11 (S.D. Ohio July 28, 2021), *report and recommendation adopted*, No. 3:20-cv-155, 2021 U.S. Dist. LEXIS 172811, 2021 WL 4147765 (S.D. Ohio Sept. 13, 2021) (rejecting the observation of claimant's physical therapist that claimant "uses a straight cane for all gait activities" as evidence of medical necessity of the cane); *see also Elliott v. Comm'r of Soc. Sec.*, No. 2:19-CV-3445, 2020 U.S. Dist. LEXIS 25884, 2020 WL 746597, at *9 (S.D. Ohio Feb. 14, 2020) (Vascura, M.J.), *report and recommendation adopted*, No. 2:19-CV-3445, 2020 U.S. Dist.

LEXIS 182744, 2020 WL 5797959 (S.D. Ohio Sept. 29, 2020) (Sargus, D.J.) (holding doctor's opinion that the plaintiff occasionally required the use of a cane on uneven surfaces was based on the plaintiff's self-report, which fell short of the medical documentation required). Thus, the Court finds the ALJ did not err in her finding that Claimant needed a cane for ambulation only.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Glenn's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: January 26, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).